PATRICIA JACKSON *et al.*, Plaintiffs-Appellees, v. CHICAGO CLASSIC JANITORIAL AND CLEANING SERVICE, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—04—1539

Opinion filed January 31, 2005.

Michael R. Slovis, of Chicago, and Robert L. Larsen, of Wheaton, for appellants.

Steven Herzberg and Steven I. Rapaport, both of Northbrook, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Patricia Jackson and Isaac Jackson, filed suit in the circuit court of Cook County against defendants Chicago Classic Janitorial & Cleaning Service[1] (Chicago Classic) and Maximum Rehabilitation Services (Maximum) alleging that Chicago Classic negligently maintained a window of plaintiff Patricia Jackson's employer, causing it to crush her fingers while performing her duties. Plaintiffs also allege that Patricia was referred to Maximum for a functional capacity evaluation (FCE) by her treating physician and that she suffered injuries to her back as a result of Maximum's improper administration of the FCE.

Defendant Maximum moved to dismiss plaintiffs' complaint pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 2002)), claiming that plaintiffs failed to file a certificate in compliance with section 2—622 of the Code (735 ILCS 5/2—622 (West 2002)). The circuit court denied Maximum's motion; however, it certified the following question to this court pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)):

"Whether it is necessary for a plaintiff to attach a certificate

---

[1]Defendant Chicago Classic did not participate in the instant appeal.

from a health care professional pursuant to 735 ILCS 5/2—622 where the Complaint alleges negligent conduct by a licensed occupational therapist during the performance of a Functional Capacity Evaluation which was ordered by plaintiff's treating physician and used to determine the vocational suitability of plaintiff[.]''

We answer the certified question in the affirmative.

## BACKGROUND

On May 1, 2001, Patricia was working as a nurse for her employer, the Veterans Administration Hospital. While attempting to open a window, Patricia injured her fingers. During the course of receiving medical care related to the injury of her fingers, her physician referred her to Maximum for an FCE to determine whether Patricia could return to work and, if so, what tasks she would be capable of doing. The FCE consisted of various exercises and tasks, including lifting, sitting, standing and bending. The FCE is designed to determine an individual's physical abilities and deficits. The occupational therapist in this case evaluated, among other things, Patricia's handgrip, pain complaints in relationship to her medical history, pain behavior and its impact on her function, biomechanics, movement, coordination and her overall physical disabilities and deficits.

While undergoing the FCE, Patricia maintains that she suffered serious injuries to her back. Plaintiffs alleged that Maximum:

"(a) failed to properly instruct its patrons in proper lifting, sitting, standing or bending techniques before requiring the patrons to perform the same;

(b) failed to adequately train and/or supervise its employees in this instruction;

(c) failed to properly supervise its patron in performing the various exercises performed in the evaluation;

(d) failed to stop the evaluation when they knew or should have known that one of their patrons was injured and complaining of back pain as a result of the exercises performed in the evaluation;

(e) failed to warn patrons that they may sustain injury in performing the exercises in the evaluation;

(f) failed to properly administer the functional capacity evaluation in that it caused injury to Patricia Jackson by requiring her to perform tests, exercises and other activities beyond her physical capabilities; [and]

(g) failed to properly train and/or supervise its employees in administering functional capacity evaluations so as to not cause injury to the individual being evaluated."

On September 26, 2003, plaintiffs filed their amended complaint at law which did not contain an affidavit of counsel or the report of an

attesting health care professional pursuant to section 2—622 of the Code. 735 ILCS 5/2—622 (West 2002). Defendant Maximum moved to dismiss plaintiffs' complaint pursuant to section 2—619 of the Code. 735 ILCS 5/2—619 (West 2002). The circuit court denied defendant Maximum's motion on March 5, 2004. Following its denial of Maximum's motion to dismiss, the circuit court presented the certified question stated above to this court. We granted leave to appeal pursuant to Supreme Court Rule 308(a).

## ANALYSIS

Plaintiffs contend that the complaint in this case alleges ordinary negligence and, therefore, no physician certificate is required pursuant to section 2—622 of the Code because no medical malpractice is alleged. Plaintiffs support their contention by further arguing that the purpose of the FCE was to determine Patricia's vocational abilities following a work injury and not to provide a diagnosis or treatment or to restore Patricia to a normal mental or physical condition. Maximum argues that plaintiffs' complaint alleges healing arts malpractice and thus plaintiffs were required to file the proper affidavit pursuant to section 2—622 of the Code. Maximum further contends that when deciding whether a complaint is one for healing arts malpractice or ordinary negligence, courts in Illinois have employed certain factors to determine the applicability of section 2—622 of the Code. The factors that Maximum identifies are: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiffs' case. Both parties agree that case law in Illinois does not directly address the issue presented in this case.

Section 2—622 of the Code provides in pertinent part:

"In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing

health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. \*\*\* For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit. \*\*\*

\* \* \*

(g) The failure to file a certificate required by this Section shall be grounds for dismissal under Section 2—619." 735 ILCS 5/2—622 (West 2002).

We begin the analysis of this issue bearing in mind that the term "medical, hospital or other healing art malpractice" must be construed broadly. *Woodard v. Krans*, 234 Ill. App. 3d 690, 703, 600 N.E.2d 477 (1992), citing *Bernier v. Burris*, 113 Ill. 2d 219, 226-27, 497 N.E.2d 763 (1986). Section 2—622 of the Code applies to "any action \*\*\* in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2—622 (West 2002).

In *Bernier*, our supreme court noted that section 2—622 is applicable "to actions for what is termed 'healing art' malpractice, a broad category that is not confined to actions against physicians and hospitals but rather, as some of the provisions indicate, may also include actions against other health professionals such as dentists or psychologists." *Bernier*, 113 Ill. 2d at 226-27.

The phrase "healing art" includes "an entire branch of learning dealing with the restoration of physical or mental health." *Lyon v. Hasbro Industries, Inc.*, 156 Ill. App. 3d 649, 654, 509 N.E.2d 702 (1987). "Malpractice" is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury \*\*\* to the recipient of those services." Black's Law Dictionary 959 (6th ed. 1990).

Although section 2—622 does not define the phrase "healing art

malpractice," Illinois courts have considered the scope and meaning of that phrase. In *Lyon*, this court began its analysis by considering the meaning of the specific terminology in order to ascertain the legislature's intent. The court noted:

> " 'Healing' is defined as: 'The restoration to a normal mental or physical condition ***.' (Taber's Cyclopedic Medical Dictionary 725 (15th ed. 1985).) 'Art' is defined as a skill acquired by experience, study, or observation and as a branch of learning. (Webster's Ninth New Collegiate Dictionary 105 (1986).) 'Malpractice' is defined as incorrect or negligent treatment of the patient by a person responsible for his health care. (Taber's Cyclopedic Medical Dictionary 1001 (15th ed. 1985).) It is also defined as a dereliction from a professional duty or a failure to exercise an adequate degree of care in rendering service. Webster's Ninth New Collegiate Dictionary 721 (1986)." *Lyon*, 156 Ill. App. 3d at 653.

Applying principles of statutory construction, the court in *Lyon* concluded that the phrase "healing art" should be given broad application encompassing "an entire branch of learning dealing with the restoration of physical or mental health." *Lyon*, 156 Ill. App. 3d at 654.

Relative to the first factor, Maximum cites to *Woodard* for the proposition that "[w]here determining the standard of care requires applying distinctively medical knowledge or principles, however basic, the plaintiff must comply with section 2—622 [of the Code]." *Woodard*, 234 Ill. App. 3d at 705-06. In the instant case, Maximum claims that the procedures employed by the occupational therapist were not within the grasp of the ordinary lay juror. Maximum notes that occupational therapists have special training and are required to be certified in order to practice in Illinois. Maximum also asserts that the occupational therapist who supervised the FCE, and thus would form the basis of liability, is licensed by the State of Illinois and subject to discipline through the Department of Professional Regulation as are doctors. We agree with Maximum and find that occupational therapists who conduct FCEs employ specialized knowledge and skill that is not within the grasp of the average lay juror.

Relative to the second factor, Maximum argues that the occupational therapist's activity that resulted in the alleged injury was inherently one of medical judgment and, accordingly, a section 2—622 certificate must be filed in this action citing to *Lyon v. Hasbro Industries*, 156 Ill. App. 3d 649, 655, 509 N.E.2d 702 (1987). In the *Lyon* case, the plaintiff alleged negligence against an ambulance service for negligent provision of services in transporting a child to a hospital and argued that a section 2—622 certificate was not necessary because the

action was one for ordinary negligence and not medical malpractice. *Lyon*, 156 Ill. App. 3d at 655. The court in *Lyon* agreed with the plaintiff that failure of the ambulance company to properly maintain the ambulance was an action in ordinary negligence. However, the court further held that the determination of what equipment is necessary and precautionary to meet the needs of a patient is inherently one of medical judgment. *Lyon*, 156 Ill. App. 3d at 655.

Maximum points out that plaintiffs alleged that Maximum was negligent in how it instructed Patricia regarding the exercises, deciding when the exercises should be stopped in light of Patricia's complaints of pain and requiring her to perform tests, exercises and other activities beyond her physical capabilities. Here, the occupational therapist is being faulted for making decisions based on her experience and training as to how much pain Patricia could safely tolerate, what level of physical exercise was safe to determine Patricia's vocational ability and the limits of Patricia's physical abilities.

Although the *Lyon* case arises in a different factual context, we find that the allegations in this case are essentially the same in nature. The *Lyon* court decided that the determination of which equipment was necessary and precautionary to meet the needs of a person in the plaintiff's condition was inherently one of medical judgment. *Lyon* 156 Ill. App. 3d at 655. Similarly, the determination of what exercises are appropriate in conducting an FCE is, in our view, inherently one of medical judgment exercised by the occupational therapist in this case. Here, it is alleged that the occupational therapist negligently ordered exercises and failed to stop certain exercises that were inappropriate for a person in plaintiff's condition. These are determinations that can only be properly made by individuals with the necessary training and expertise.

The third factor courts consider in determining whether a complaint alleges ordinary negligence or medical malpractice is the evidence that will be necessary to establish the standard of care. *Kolanowski v. Illinois Valley Community Hospital*, 188 Ill. App. 3d 821, 823-24, 544 N.E.2d 821 (1989). " 'Generally, in a medical malpractice case, plaintiff must offer expert testimony to establish the standard of care unless defendant's conduct is so grossly negligent or the treatment so common that a lay person could readily understand it.' " *Kolanowski*, 188 Ill. App. 3d at 824, quoting *Edelin v. Westlake Community Hospital*, 157 Ill. App. 3d 857, 862, 510 N.E.2d 958 (1987). If, however, the standard may be established on the basis of defendant's administrative policies or other evidence short of medical expert testimony, plaintiff will be permitted to proceed with his suit on a theory of ordinary negligence. *Kolanowski*, 188 Ill. App. 3d at 824.

An example given by the *Kolanowski* court was an action based on a slip and fall injury allegedly resulting from defendant hospital's negligent failure to remove or warn of water on the floor. That example constituted an ordinary premises liability claim rather than medical malpractice claim. *Kolanowski* 188 Ill. App. 3d at 824. In this case, however, the allegations concern the manner in which the occupational therapist conducted, supervised and warned Patricia throughout the FCE. We find that the evidence necessary to prove the allegations in the complaint is beyond the ken of the average lay juror and as such will require expert testimony. This is not to say that anytime expert testimony is necessary, a section 2—622 certificate will also be required. However, under the circumstances of this case, we find that the proper levels of supervision and the appropriate exercises were determined by Patricia's medical condition and therefore involved medical judgments. In other words, the occupational therapist failed to properly administer the FCE in light of Patricia's physical capabilities and pain.

■ After carefully reviewing the facts of this case and the factors applied by this court in previous cases regarding the application of section 2—622 of the Code, we hold that the allegations against Maximum fall within the ambit of the term "healing art malpractice" and section 2—622 of the Code. It was, therefore, necessary for plaintiff to provide a physician's affidavit stating that a meritorious cause of action existed under the facts of the instant case.

Plaintiffs argue that the purpose of the FCE was not to restore Patricia to normal physical or mental health and is not, by definition, a "healing art" pursuant to section 2—622 of the Code. Plaintiffs cite to *Milos v. Hall*, 325 Ill. App. 3d 180, 184, 757 N.E.2d 654 (2001), to support their position. We find that plaintiffs' reliance on *Milos* is misplaced because the facts and allegations in this case are distinguishable from those in *Milos*.

When evaluating whether a claim involves healing art malpractice, Illinois courts have focused on the nature of the negligent act rather than the location where the conduct occurred. *Milos*, 325 Ill. App. 3d at 184; *Lyon*, 156 Ill. App. 3d at 655. In the case before us, the allegations are different in nature from those alleged in *Milos*. In *Milos*, this court held that a section 2—622 certificate was not required where a plaintiff alleges that a pathologist wilfully and maliciously omitted certain premortem lab results from an autopsy report in order to misrepresent the cause of death for the purpose of protecting other doctors from liability claims. *Milos*, 325 Ill. App. 3d at 184. The *Milos* court found that the plaintiff did not allege that the pathologist breached an accepted standard of care while attempting to restore the deceased to normal mental or physical health.

Here, even if Patricia was not receiving treatment designed to restore her to physical or mental health when the injury occurred, we do not agree that the inquiry ends there. In that respect we find *Baumann v. American National Red Cross*, 262 F. Supp. 2d 965 (C.D. Ill. 2003), to be instructive. In *Baumann*, the plaintiff sued the American Red Cross for alleged injuries she sustained after donating blood at an American Red Cross facility. The plaintiff there alleged that the defendant was negligent for failing to warn her of the potential for injury involved in drawing blood, improperly injecting the blood-drawing device and injuring her right median nerve. *Baumann*, 262 F. Supp. 2d at 966. Relying on *Woodard*, the *Baumann* court held that "although [the plaintiff] was not a 'patient' receiving 'medical treatment' in the traditional sense from the Red Cross, *** this case is one for medical malpractice rather than simple negligence, and section 2—622 applies." *Baumann*, 262 F. Supp. 2d at 968. The *Baumann* court stated that the "focus of section 2—622 is not as much on the education, training, or certification of the defendant as it is on the nature of the claim itself. [Citations.]" *Baumann*, 262 F. Supp. 2d at 967. We find the *Baumann* case to be more analogous to the case here than the *Milos* case.

Plaintiffs also cite to *Owens v. Manor Health Care Corp.*, 159 Ill. App. 3d 684, 512 N.E.2d 820 (1987), arguing that "healing arts" malpractice is not appropriate here because no steps were taken to restore Patricia's physical or mental health. *Owens*, 159 Ill. App. 3d at 687. However, the *Owens* case involved an allegation of negligence brought against a nursing home where a resident fell as he attempted to get out of a wheelchair. *Owens*, 159 Ill. App. 3d at 685. This court held that the determination to be made pursuant to the allegations was not inherently one of medical judgment. *Owens*, 159 Ill. App. 3d at 688-89. We further decided that the plaintiff in *Owens* was only receiving custodial shelter and that expert medical testimony would not be required to assess the acts of the defendant. *Owens*, 159 Ill. App. 3d at 688. In this case, however, expert testimony and medical judgment will be required to determine what aspects of an FCE would be appropriate for a patient in Patricia's physical condition. The case before us is not one where plaintiffs allege that Patricia fell out of a chair while waiting to undergo the FCE. The allegations leveled by plaintiffs against Maximum are for healing arts malpractice.

Furthermore, we do not agree with plaintiffs' claims that Patricia's visit to the occupational therapist and the purpose of the FCE was not intended to restore her to normal physical health. In our view, the FCE was a necessary part of a comprehensive treatment plan designed to ultimately restore Patricia to a normal physical and

vocational lifestyle. The FCE was ordered by Patricia's treating physician and required by her employer prior to having Patricia return to work. Although the FCE is not designed to diagnose a specific illness or injury, it was administered in this case to determine whether Patricia could continue working without risk of further injury. As such, the services rendered by Maximum to Patricia were an integral part of her recovery and treatment.

## CONCLUSION

For the foregoing reasons, we hold that a certificate pursuant to section 2—622 of the Code was required in this case because plaintiffs' complaint sounded in healing arts malpractice. Accordingly, we answer the certified question in the affirmative.

Certified question answered. Circuit Court reversed and cause remanded for further proceedings.

CAHILL, P.J., and GORDON, J., concur.