James BOMMERSBACH, Plaintiff,

v.

Brian RUIZ, M.D. and Wexford Health Sources, Defendants.

No. 3:02–CV–01115–DRH.

United States District Court, S.D. Illinois.

June 9, 2006.

---

Barbara J. Clinite, Law Offices of Barbara J. Clinite, Chicago, IL, for Plaintiff.

Matthew R. Booker, Theresa M. Powell, Heyl, Royster et al., Springfield, IL, for Defendants.

### MEMORANDUM AND ORDER

HERNDON, District Judge.

#### I. *Introduction and Background*

This matter comes before the Court on a Report and Recommendation ("the Report") (Doc. 39). Based on the following, the Court adopts the Report in its entirety.

On October 30, 2002, James Bommersbach, a civilly committed person at the Big Muddy Correctional Center, filed a two-count complaint against Brian Ruiz, M.D., and Wexford Health Services (Doc. 1). Count I of the complaint is a claim for denial of medical care brought pursuant to 42 U.S.C. § 1983 and Count II is a claim of common law negligence due to Defendants' failure to comply with an Illinois statute, 730 ILCS 5/3–7–2(d), which requires medical care for committed persons. Bommersbach alleges Defendants withheld treatment for both his skin cancer and leukemia. Specifically, Bommersbach contends that in November 2000, Ruiz refused to send Bommersbach to see his cancer specialists, Drs.Oza and Poulos, and that he did not see a cancer specialist until May 2002.

On September 16, 2003, the Court adopted a Report and Recommendation submitted by then Magistrate Judge Gerald B. Cohn (Doc. 11). In that Order, the Court found that the PLRA did not apply to James Bommersbach as he was a civilly committed person and not a prisoner. The Court also found as to Count II that "it was premature to rule on the lack of jurisdiction issue since none of the parties thoroughly addressed the issue. The Court agrees with Magistrate Judge Cohn that

Count II could be a pendent state law claim that the Court may have jurisdiction to hear. As recommended by Magistrate Judge Cohn, the Court ORDERS the parties to review Count II to determine whether it is properly before the Court. Thus, the Court adopts Magistrate Judge Cohn's recommendation and denies Defendants' motion to dismiss." (Doc. 11, ps.5–6).

Thereafter, this matter was reassigned to Magistrate Judge Donald G. Wilkerson (Doc. 21). On April 14, 2005, Magistrate Wilkerson granted Plaintiff's motion to appoint Richard Bommersbach as Special Administrator of the Estate of James Bommersbach and granted in part leave to file an amended complaint (Doc. 29).[1] On May 6, 2005, Richard Bommersbach, as Special Administrator of the Estate of James Bommersbach, filed an Amended Complaint against Defendants (Doc. 31). Like the original complaint, Plaintiff alleges that Defendants withheld treatment for both decedent's skin cancer and leukemia. The Amended Complaint also contends that in November 2000, Ruiz refused to send decedent to see his cancer specialists, Drs.Oza and Poulos, and that decedent did not see a cancer specialist until May 2002. The Amended Complaint further alleges that decedent's cancerous conditions led to his death on December 12, 2004 (Doc. 31, Count I; ¶ 31; Count II, ¶ 19).

Count I is for denial of medical care under 42 U.S.C. § 1983 and Count II is for common law claim for medical negligence (Doc. 31, ¶ 6). Count II alleges that it was the duty of Defendants under 730 ILCS 1003–7–2(d) to provide medical care to Plaintiff's decedent, by reason of a contract with the Illinois Department of Corrections (Doc. 31; Count II, ¶ 14). Count II further alleges that Defendants failed to

---

1. James Bommersbach died on December 12, 2004 as a result of his cancers (Doc. 23).

provide chemotherapy treatments and Neupogen ordered by Dr. Oza; failed to provide radiation treatments ordered by Dr. Poulos and failed to provide the medical care by specialists which had been approved previously by the Health Care Unite Medical Director (Doc. 31; Count II, ¶ 15).

On September 26, 2005, Defendants moved to dismiss Count II of the Amended Complaint (Doc. 36). Defendants argue that Count II attempts to state a cause of action for medical negligence/medical malpractice under Illinois law, thus, Plaintiff failed to comply with Illinois law by failing to attach an affidavit from a reviewing health care professional as required by 735 ILCS 5/2–622. On October 10, 2005, Plaintiff filed an opposition to the motion to dismiss arguing that Count II is not one for medical malpractice, therefore, 735 ILCS 5/2–622 does not apply (Doc. 38). He argues that Count II is brought against Defendants for conduct not involving treatment, but rather decisions whether to approve the expenditures for medical care ordered by physicians at Big Muddy Correctional Center and specialists.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Wilkerson submitted a Report on April 25, 2006 (Doc. 39). The Report recommends that the Court grant Defendants' motion to dismiss Count II of Plaintiff's Amended Complaint for failing to attach a proper affidavit as required by 735 ILCS 5/2–622 (Doc. 36). Specifically, Magistrate Judge Wilkerson recommends that the Court find that Count II of the Amended Complaint asserts a claim for "healing art malpractice," therefore, Plaintiff needs to comply with the requirements

of 735 ILCS 5/2–622 and attach an affidavit from a medical professional indicating that the case has merit. The Report was sent to the attorneys of record with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the Report. On May 11, 2006, Plaintiff filed objections to the Report (Doc. 41).

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir.1992). The Court may "accept, reject of modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.*

In his objections, Plaintiff maintains that the Court should reject the Report because Magistrate Judge Cohn previously found that Count II is not based on healing art malpractice (Doc. 41).[2] Plaintiff contends that Count II is a common law negligence action, supported in part by violation of the statutory duty to provide medical care. Plaintiff further contends that in this case "the decisions involving medical judgment had already been made before Dr. Ruiz took over the care of Mr. Bommersbach. The healthcare unit doctors had already decided that Mr. Bommersbach needed cancer treatment by specialists, and the specialists had already decided what course of treatment was needed." (Doc. 41, ¶ 13). "Count II is

---

**2.** Plaintiff correctly notes that the undersigned adopted Magistrate Judge Cohn's Report and Recommendation without discussion of this issue as the parties did not address this portion of Judge Cohn's Report and Recommendation. In the Court's Order adopting Judge Cohn's Report and Recommendation, the Court found that Count II was at least potentially a pendent state-law claim that was within federal subject matter jurisdiction.

brought against DR. RUIZ and WEX-FORD HEALTH SOURCES for conduct not involving medical judgment, but rather a decision to discontinue treatment already prescribed." (Doc. 41, ¶ 16). Based on the following, the Court rejects Plaintiff's argument, adopts Magistrate Judge Wilkerson's findings and conclusions and grants Defendants' motion to dismiss Count II of the Amended Complaint.

## II. Motion to Dismiss

The standard governing motions to dismiss is well-established. The allegations of the complaint, and all reasonable inferences therefrom, are taken as true, and the question is whether—under those assumptions—the plaintiff would have a right to legal relief. *Baker v. Westinghouse Elec. Co.*, 70 F.3d 951, 954 (7th Cir.1995) (citing *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)). A plaintiff need not set out in detail all facts upon which a claim is based, but the complaint must allege sufficient facts to outline a cause of action. *McKay v. Town & Country Cad-illac, Inc.*, 991 F.Supp. 966, 969 (N.D.Ill. 1997). *Accord Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir.1998). Further, the complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *McKay* at 969 (quoting *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985)). A plaintiff can plead conclusions, but the conclusions "must provide the defendant with at least minimal notice of the claim." *Kyle* at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir.1995)). The Court is *not* required to accept as true legal conclusions alleged or inferred from pleaded facts. *McKay* at 969 (citing *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994)).

## III. Analysis

 Section 2–622 of the Illinois Code applies "to any action ... in which the plaintiff seeks damages for injuries or death by reason of medical, hospital or other healing art malpractice." 735 ILCS 5/2–622.[3] The term "medical, hospital or

3. Section 2–622 of the Code provides in pertinent part:

"In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:
1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.... For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit....
(g) The failure to file a certificate required by this Section shall be grounds for dismissal

other healing art practice" must be construed broadly." *Jackson v. Chicago Classic Janitorial and Cleaning Service, Inc.*, 355 Ill.App.3d 906, 291 Ill.Dec. 469, 823 N.E.2d 1055, 1058 (Ill.App.2005)(leave to appeal denied, 215 Ill.2d 598, 295 Ill.Dec. 521, 833 N.E.2d 3 (Ill. May 25, 2005) (citations omitted). "The phrase 'healing art' includes 'an entire branch of learning dealing with the restoration of physical or mental health.' " *Id.* at 1059(quoting *Lyon v. Hasbro Industries, Inc.*, 509 N.E.2d "Malpractice is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent member in of the profession with the result of injury * * *to the recipient of those services." *Id.* at 1059 (quoting Black's Law Dictionary 959 (6th ed.1990)). Further, " '[m]alpractice' is defined as incorrect or negligent treatment of the patient by a person responsible for his health care." *Id.* (citing Taber's Cyclopedic Medical Directory 1001 (15th ed.1985). "It is also defined as a dereliction from a professional duty or a failure to exercise an adequate degree of care in rendering service." *Id.* (citing Webster's Ninth New Collegiate Dictionary 721 (1986); *Lyon*, 156 Ill. App.3d 649, 109 Ill.Dec. 41, 509 N.E.2d 702)).

*Jackson* identified three factors for courts to use to determine whether a complaint is one for malpractice requiring the affidavit or whether the complaint is one for ordinary negligence: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff's case. *Id.* at 1058.

After applying the three factors in this case, the Court finds that Count II of Plaintiff's Amended Complaint sounds in medical malpractice. As to the first factor, Count II alleges that Dr. Ruiz was negligent in failing to provide the treatment previously prescribed decedent's prior doctors and that Dr. Ruiz was aware of the decedent's course of treatment. The Court agrees with the Report's finding that "this determination of whether this conduct was negligent is 'not within the grasp of the ordinary lay juror' and requires application of distinctively medical knowledge and principles." (Doc. 39, p. 8). The Court also finds that the second factor is has been met. A decision as to whether Dr. Ruiz acted negligently in failing to follow the course of treatment ordered by the previous doctors and refusing to refer decedent to another specialist involves determinations about the severity of decedent's medical conditions and the proper treatment are inherently matters of medical judgment. Finally, the third factor, evidence that will be necessary to establish the standard of care at trial, is met. Count II raises issues about Dr. Ruiz's exercise of professional medical judgment which certainly will require expert testimony. Based on the allegations contained in Count II of the Amended Complaint, the Court concludes that this case squarely falls within the ambit of 735 ILCS 5/2–622.

## IV. Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 39). The Court **GRANTS** Defendants' motion to dismiss Count II of Plaintiff's Amended Complaint (Doc 36). The Court **DISMISSES without prejudice** Count II of Plaintiff's Amended Complaint. The Court **ALLOWS** Plaintiff ninety (90) days from the entry of this Order to file an

under Section 2–619." 735 ILCS 5/2–622

(emphasis added).

amended complaint as to Count II that contains an affidavit required by 735 ILCS 5/2–622.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

WILKERSON, United States Magistrate Judge.

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Rule 72.1(a) for a Report and Recommendation on the Motion to Dismiss Count II of Plaintiff's Amended Complaint filed by the Defendants, Brian Ruiz, M.D. and Wexford Health Sources ("Wexford"), on September 26, 2005 (Doc. 36).

For the reasons set forth below, it is **RECOMMENDED** that the Motion to Dismiss Count II of Plaintiff's Amended Complaint be **GRANTED**, that Count II of the Amended Complaint in this case be **DISMISSED WITHOUT PREJUDICE** to the re-filing of Count II of the Amended Complaint in compliance with the requirements of 735 ILCS 5/2–622 within ninety (90) days from the date of entry of the Order of dismissal, and that the Court adopt the following statement of fact and conclusions of law:

### STATEMENT OF FACTS

James Bommersbach, now deceased, filed this action in 2002 while civilly committed to the Big Muddy River Correctional Center ("BMRCC") near Ina, Illinois, pursuant to the Illinois Sexually Dangerous Persons Act, 725 ILCS 205/0.01—725 ILCS 205/12. He alleges that medical personnel at BMRCC denied him proper care for skin cancer and leukemia. In 2004, Mr. Bommersbach died, whereupon the administrator of his estate was substituted as the Plaintiff in this case. At the time of the substitution, an amended complaint naming as Plaintiff Richard Bommersbach, the administrator of James Bommersbach's estate, was filed.

The amended complaint in this case alleges that in October 2000 Dr. Brian Ruiz, an employee of Wexford, which had contracted with BMRCC to provide medical services to the prison's inmates, became the medical director of BMRCC's Health Care Unit, where James Bommersbach was a patient (*see* Amended Complaint ("Am.Compl.") ¶¶ 7, 9, 12). At that time, Mr. Bommersbach was under regular treatment for his skin cancer and leukemia by oncology specialists, with the cooperation of the Health Care Unit (*see id.* ¶ 10). These oncology specialists, namely, Dr. Yagnesh Oza, who was treating Mr. Bommersbach for leukemia, and Dr. Eugene Poulos, who was treating Mr. Bommersbach for skin cancer, recommended chemotherapy and radiation treatment for Mr. Bommersbach's medical conditions (*see id.* ¶¶ 11, 14, 16).

In November 2000, Dr. Ruiz, after reviewing Mr. Bommersbach's medical history, discontinued his treatment by Dr. Oza and Dr. Poulos (*see* Am. Compl. ¶¶ 14 and 20). Mr. Bommersbach was not referred to a specialist again for treatment of his leukemia and skin cancer until October 2001, after he was seen by a new physician at BMRCC (*see id.* ¶ 21). The Amended Complaint alleges that, as a result of Dr. Ruiz's decision to discontinue Mr. Bommersbach's treatment by Dr. Oza and Dr. Poulos, Mr. Bommersbach's medical condition worsened, and he suffered greater disfigurement from cancer and the treatment thereof, as well as more severe reactions to chemotherapy, than he otherwise would have suffered if the treatment had been continued (*see id.* ¶¶ 28 and 30).

The Amended Complaint asserts two counts. Count I, brought pursuant to 42 U.S.C. § 1983, alleges that Dr. Ruiz and Wexford, acting under color of state law, violated James Bommersbach's rights under the Eighth Amendment and the Fourteenth Amendment of the United States Constitution through their deliberate indifference to his serious medical needs. Count II alleges a claim for negligence under Illinois law. At issue here is Count II of the Amended Complaint, which Dr. Ruiz and Wexford have moved to dismiss on the grounds that it was not brought in compliance with 735 ILCS 5/2–622, which sets forth the requirements for a pleading asserting a "healing art malpractice" claim.

## DISCUSSION

### A. Legal Standard

On a motion to dismiss, the Court accepts all well-pleaded allegations in the Plaintiff's complaint as true. *See* Fed. R.Civ.P. 12(b)(6); *Cleveland v. Rotman,* 297 F.3d 569, 571 (7th Cir.2002). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the allegations of a complaint, not to determine the merits of a case. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990); *Coolsavings.Com, Inc. v. Catalina Mktg. Corp.,* No. 98 C 6668, 1999 WL 342431, at *1 (N.D.Ill. May 14, 1999). A Plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the Plaintiff must provide a short and plain statement that shows that he or she is entitled to relief. *See* Fed.R.Civ.P. 8(a); *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *See also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir. 1988).

### B. The Defendants' Motion to Dismiss Count II of the Amended Complaint

#### 1. The Plaintiff's Failure to Comply with 735 ILCS 5/2–622

The issue before the Court is simply whether Count II of the Amended Complaint asserts a claim for "healing art malpractice" within the meaning of 735 ILCS 5/2–622. If so, Count II is subject to dismissal for failure to comply with the requirements of section 2–622, which provides, in pertinent part, "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff[ ] . . . shall file an affidavit" from a medical professional indicating that the case has merit. 735 ILCS 5/2–622(a)(1). A failure to file the required affidavit is grounds for dismissal on the pleadings. *See* 735 ILCS 5/2–622(g).[1]

---

**1.** The Court concludes that the requirements of 735 ILCS 5/2–622 constitute state substantive law for purposes of the *Erie* doctrine, which requires a federal court to apply state law, regardless of the jurisdictional basis for a case, in the absence of a countervailing federal interest warranting the application of federal law. *See Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis,* 806 F.2d 146, 149–50 (7th Cir.1986);

19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4520 (3d ed. 1998 & Supp.2005) (collecting cases). The purpose of section 2–622 "was to eliminate frivolous [medical malpractice] lawsuits at the pleadings stage." *Lyon by Lyon v. Hasbro Indus., Inc.,* 156 Ill.App.3d 649, 109 Ill.Dec. 41, 509 N.E.2d 702, 706–07 (Ill.App.Ct.1987). In *Murrey v. United States,* 73 F.3d 1448 (7th Cir.1996), the court ex-

As the Plaintiff's counsel points out, the issue of whether Count II is in fact a claim for healing art malpractice within the meaning of the 735 ILCS 5/2–622 has been the subject of some litigation earlier in these proceedings. In a Report and Recommendation entered by United States Magistrate Judge Gerald B. Cohn on September 2, 2003, Judge Cohn concluded that Count II of Mr. Bommersbach's original complaint in this case, which, like the amended complaint, asserted a claim for negligence, was not subject to dismissal for failure to comply with the requirements of section 2–622 (*see* Doc. 9). District Judge Herndon subsequently adopted the Report and Recommendation (*see* Doc. 11).

■ Importantly, however, Judge Herndon in his Order adopting Judge Cohn's Report and Recommendation did not address the question of whether Count II of Mr. Bommersbach's original complaint was a claim for healing art malpractice and instead merely held that Count II was at least potentially a pendent state-law claim that was within federal subject matter jurisdiction (*see* Doc. 11 at 5–6). *See also Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc.*, 844 F.Supp. 1156, 1160 (S.D.Tex.1994) (a magistrate judge may only make recommendations as to dispositive motions; a district judge, upon de novo review, makes the final decision).

Therefore, Judge Herndon's Order is not the law of the case as to the question of whether Count II of the Amended Complaint asserts a claim for healing art malpractice and this Court may treat the issue as open. *See Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined."); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1032 (7th Cir.1997) ("Law of the case ... applies only to issues that were decided ... but not to questions which might have been decided but were not.").[2]

Turning then to the question of whether Count II of the Amended Complaint is subject to dismissal for failure to comply with the requirements of 735 ILCS 5/2–622, this Court respectfully disagrees with Judge Cohn's earlier determination that Count II does not assert a claim for healing art malpractice for purposes of section 2–622. The matter of what is or is not medical malpractice under the statute has been cloudy at times. *See Owens v. Manor Health Care Corp.*, 159 Ill.App.3d 684, 111 Ill.Dec. 431, 512 N.E.2d 820, 823–24 (Ill.App.Ct.1987) (allegations by a nursing home resident that he fell out of his wheelchair due to a lack of proper restraints asserted a claim for negligence, not mal-

plained that when "a rule [is] limited to a particular area of law and motivated by concerns about the potential impact on primary behavior ... of making it too easy for plaintiffs to win a particular type of case," then the rule is "almost certainly" substantive law for *Erie* purposes. *Id.* at 1456. *See also Estate of Cassara v. Illinois*, 853 F.Supp. 273, 281 (N.D.Ill.1994) ("Under 735 ILCS 5/2–622, a plaintiff must attach to a complaint an affidavit from a knowledgeable health professional attesting that there is a reasonable and meritorious cause for filing an action. This requirement is applicable to federal district court filings.").

**2.** Additionally, "[t]he law of the case doctrine is not an inexorable command; it is a discretionary rule that is ordinarily followed but which leaves all court rulings subject to revision at any time before entry of judgment." *In re Data Evaluation, Ltd. v. Harris Corp.*, No. 85–C–10799, 1992 WL 82354, at *1 n. 1 (N.D.Ill. Apr.16, 1992) (citing *Nudo v. McNeil*, 702 F.Supp. 825, 826–27 (D.Or.1988)). *See also Atchley v. Heritage Cable Vision Assocs.*, 926 F.Supp. 1381, 1383 (N.D.Ind.1996) (a district court has inherent power to reconsider interlocutory orders entered in a case at any time before the entry of a final judgment as justice may require).

practice). *But cf. Kolanowski v. Illinois Valley Cmty. Hosp.*, 188 Ill.App.3d 821, 136 Ill.Dec. 135, 544 N.E.2d 821, 824–25 (Ill.App.Ct.1989) (finding on similar facts that the claim was for malpractice, not negligence). However, recent decisions of the Illinois state courts have clarified the appropriate standard. Under these recent authorities, it is clear that Count II is a claim for malpractice.

In *Jackson v. Chicago Classic Janitorial & Cleaning Service, Inc.*, 355 Ill.App.3d 906, 291 Ill.Dec. 469, 823 N.E.2d 1055 (Ill.App.Ct.2005), the court identified three factors to use in determining whether a complaint is one for malpractice requiring an affidavit under 735 ILCS 5/2–622 or instead is one for ordinary negligence. The first factor is whether "determining the standard of care requires applying distinctively medical knowledge or principles, however basic." *Jackson*, 291 Ill.Dec. 469, 823 N.E.2d at 1059 (quoting *Woodard v. Krans*, 234 Ill.App.3d 690, 175 Ill.Dec. 546, 600 N.E.2d 477, 488 (Ill.App. Ct.1992)). The second factor is whether the "activity that resulted in the alleged injury was inherently one of medical judgment." *Id.* (citing *Lyon*, 109 Ill.Dec. 41, 509 N.E.2d at 706). The third factor is "the evidence that will be necessary to establish the standard of care [at trial] .... Generally, in a medical malpractice case, [a] plaintiff must offer expert testimony to establish the standard of care unless [the] defendant's conduct is so grossly negligent or the treatment so common that a lay person could readily understand it." *Id.* at 1060 (quoting *Kolanowski*, 136 Ill.Dec. 135, 544 N.E.2d at 823).

The *Jackson* court noted that the term "medical, hospital or other healing art malpractice" for purposes of 735 ILCS 5/2–622 "must be construed broadly." 291 Ill.Dec. 469, 823 N.E.2d at 1058. In *Bernier v. Burris*, 113 Ill.2d 219, 100 Ill.Dec. 585, 497 N.E.2d 763 (Ill.1986), the court explained that " 'healing art' malpractice" comprises "a broad category that is not confined to actions against physicians and hospitals but rather, as some of the provisions [of section 2–622] indicate, may also include actions against other health professionals such as dentists or psychologists." *Id.* at 767. In fact, the term "healing art" is broad enough in scope to cover licensed health care services, in addition to licensed practitioners and hospitals. *See Lyon*, 109 Ill.Dec. 41, 509 N.E.2d at 706–07 (an allegation that an ambulance service failed to adequately equip its ambulance fell within the ambit of the statutory term "healing art malpractice," and thus an expert's affidavit stating that there was reasonable and meritorious cause for the filing of the action was required).

Turning then to the question of whether, under the factors set out in *Jackson*, Count II of the Amended Complaint in this case asserts a claim for healing art malpractice, the Court concludes that the first factor, whether determining the standard of care requires applying distinctively medical knowledge or principles, weighs in favor of a finding that Count II is a claim for medical malpractice. The gravamen of the Plaintiff's allegations is that Dr. Ruiz was negligent in that, despite his knowledge of James Bommersbach's severe medical conditions and the treatment of those conditions recommended by Dr. Oza and Dr. Poulos, he discontinued Mr. Bommersbach's treatment by the oncology specialists, refused to follow the course of treatment recommended by those specialists, and refused to refer Mr. Bommersbach to another specialist for treatment. The determination of whether this conduct was negligent is "not within the grasp of the ordinary lay juror" and requires application of distinctively medical knowledge or principles. *Jackson*, 291 Ill.Dec.

469, 823 N.E.2d at 1059 (the Plaintiff's claim that she suffered a back injury due to the negligence of a licensed occupational therapist in conducting a functional capacity evaluation ("FCE") to determine her ability to return to work after a prior injury required the application of distinctively medical knowledge or principles to determine the standard of care; the procedures employed by the occupational therapist were not within the grasp of the ordinary lay juror, given that occupational therapists have special training, are required to be certified in order to practice in Illinois, and, like doctors, are subject to discipline through the Illinois Department of Financial and Professional Regulation).

The second factor, whether the activity that resulted in the alleged injury was inherently one of medical judgment, also favors the conclusion that Count II of the Amended Complaint is a claim for healing art malpractice. A determination about whether Dr. Ruiz acted negligently in discontinuing James Bommersbach's treatment by Dr. Oza and Dr. Poulos, refusing to follow the course of treatment recommended by the oncology specialists, and refusing to refer Mr. Bommersbach to another specialist for treatment involves determinations, about the severity of Mr. Bommersbach's medical conditions and the proper treatment therefor, that are inherently matters of medical judgment. *See Jackson,* 291 Ill.Dec. 469, 823 N.E.2d at 1060 (allegations that an occupational therapist negligently performed an FCE implicated matters that were inherently of medical judgment: "[T]he determination of what exercises are appropriate in conducting an FCE is . . . inherently one of medical judgment exercised by the occupational therapist in this case."). *See also Kolanowski,* 136 Ill.Dec. 135, 544 N.E.2d at 824–25 (a claim that a hospital was negligent because it allegedly knew that a patient was partially paralyzed yet did not

supervise him or place proper restraints around his bed to prevent him from injuring himself was within the scope of 735 ILCS 5/2–622 because the proper levels of supervision and restraint were determined by the patient's medical condition and therefore involved medical judgments); *Lyon,* 109 Ill.Dec. 41, 509 N.E.2d at 706 (allegations that an ambulance was negligently equipped asserted a claim for medical malpractice because "[t]he determination of which equipment is necessary and precautionary to meet a person in plaintiff's condition[ ] . . . is inherently one of medical judgment.").

Finally, the third factor to be evaluated, the evidence that will be necessary to establish the standard of care at trial, weighs in favor of a finding that Count II of the amended complaint is a claim for healing art malpractice. The Plaintiff's allegations in this case concern the quality of the medical treatment Dr. Ruiz furnished to James Bommersbach, a matter that is "beyond the ken of the average lay juror and as such will require expert testimony." *Jackson,* 291 Ill.Dec. 469, 823 N.E.2d at 1060 (allegations concerning the manner in which an occupational therapist conducted, supervised, and warned the Plaintiff during an FCE implicated medical judgments about the proper levels of supervision and the appropriate exercises in light of the Plaintiff's medical condition and therefore would require expert medical testimony at trial); *Kolanowski,* 136 Ill.Dec. 135, 544 N.E.2d at 824–25 (allegations that the defendant hospital failed to provide a partially-paralyzed Plaintiff with adequate supervision and restraints, in the form of bed rails, so that the Plaintiff fell out of bed, would require expert proof: "[T]he need for bed rails in light of a patient's medical condition is not a matter of common knowledge, but requires medical knowledge, skill, and training."). *Cf. Brandt v.*

*Sarah Bush Lincoln Health Ctr.*, 329 Ill. App.3d 348, 264 Ill.Dec. 766, 771 N.E.2d 470, 474–75 (Ill.App.Ct.2002) (a patient's claim against a hospital for breach of the implied warranty of merchantability in connection with the sale of an allegedly defective pubovaginal sling was not a claim for healing art malpractice; the statutory requirement that a Plaintiff file a physician's affidavit to support a claim of healing art malpractice does not apply to non-malpractice cases in which a Plaintiff must present expert medical testimony to prove a medical injury).

 The Court is aware that, in some instances, a claim for negligence "may be established on the basis of [a] defendant's administrative policies or other evidence short of medical expert testimony." *Kolanowski*, 136 Ill.Dec. 135, 544 N.E.2d at 823–24. *See also Jones v. Chicago HMO Ltd. of Ill.*, 191 Ill.2d 278, 246 Ill.Dec. 654, 730 N.E.2d 1119, 1132–34 (Ill.2000) (an allegation by a Plaintiff that a health maintenance organization ("HMO") negligently assigned more patients to a contract physician than he was capable of serving involved an administrative or managerial action by the HMO, rather than the professional conduct of its physicians, and thus properly fell within the purview of an institutional negligence claim by the Plaintiff against the HMO). However, "the type of case in which a plaintiff need not file a section [735 ILCS 5/]2–622 affidavit against a defendant health care provider is the exceptional one." *Woodard*, 175 Ill.Dec. 546, 600 N.E.2d at 488. The Court's careful review of the amended complaint in this case leads inexorably to the conclusion that this is not one of the exceptional cases against a medical provider that fall outside the scope of section 2–622.

The amended complaint contains no allegations of wrongdoing by Wexford; instead, all of the allegations of actionable misconduct asserted therein concern alleged wrongdoing by Dr. Ruiz. Also, the allegations of wrongdoing by Dr. Ruiz focus on his refusal to follow the course of treatment for James Bommersbach recommended by other physicians. Although the Plaintiff's counsel analogizes this case to an action to recover benefits owed under an insurance policy, Count II of the Amended Complaint clearly sounds in tort, not contract; to the extent the Plaintiff asserts rights based upon the contract between Wexford and BMRCC, the failure of Count II of the Amended Complaint to assert a claim in contract is fatal. *See Jones*, 246 Ill.Dec. 654, 730 N.E.2d at 1135 (stating that the plaintiff's claim that she could "maintain a cause of action on [a] contract" to which she was not a party "while also disclaiming any reliance on a third-party beneficiary theory of liability" was "not correct as a matter of law").

 The right of action asserted in Count II of the amended complaint is based entirely on a tort duty, not a contractual one, and it clearly is based on a physician's duty of reasonable care. Count II raises issues about Dr. Ruiz's exercise of his professional judgment that plainly bring the claim within the scope of 735 ILCS 5/2–622. *See Kus v. Sherman Hosp.*, 204 Ill.App.3d 66, 149 Ill.Dec. 103, 561 N.E.2d 381, 383–84 (Ill.App.Ct.1990) (allegations that a hospital was negligent in allowing a physician to perform a surgical procedure using a medical device from which the Food and Drug Administration had withdrawn its approval asserted a claim for healing art malpractice rather than administrative hospital negligence). In light of the facts alleged in the amended complaint, which the Court must take as true at this juncture, it is difficult to imagine a legitimate medical reason to deny chemotherapy and radiation treatment to a

cancer patient, but no doubt at some point Dr. Ruiz and Wexford will attempt to proffer one. The Court concludes that Count II of the amended complaint in this case is subject to the requirements of 735 ILCS 5/2–622.[3]

### 2. The Remedy for the Plaintiff's Failure to Comply with 735 ILCS 5/2–622

■ Having determined that Count II of the amended complaint in this case is in fact a claim for healing art malpractice within the meaning of 735 ILCS 5/2–622, the Court turns to the question of the correct remedy for the Plaintiff's non-compliance with the statute. Although the decision to dismiss a claim for medical malpractice with or without prejudice for failure to comply with section 2–622 is left to the sound discretion of the Court, *see McCastle v. Mitchell B. Sheinkop, M.D., Ltd.*, 121 Ill.2d 188, 117 Ill.Dec. 132, 520 N.E.2d 293, 295 (Ill.1987), the Court concludes that dismissal of Count II of the Amended Complaint with prejudice would be a clear abuse of discretion. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2–622 before her action is dismissed with prejudice.'" *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir.2000) (quoting *Cammon v. West Suburban Hosp. Med. Ctr.*, 301 Ill.App.3d 939, 235 Ill.Dec. 158, 704 N.E.2d 731, 739 (Ill.App.Ct.1998)).

Also weighing against dismissal with prejudice is the fact that the allegations of Count II of the amended complaint assert a substantial claim for malpractice against the Defendants. "[T]he technical requirements of [735 ILCS 5/2–622] should not be mechanically applied to deprive a plaintiff of his substantive rights." *Apa v. Rotman*, 288 Ill.App.3d 585, 223 Ill.Dec. 851, 680 N.E.2d 801, 804 (Ill.App.Ct.1997). Finally, in failing to file a section 2–622 affidavit, the Plaintiff no doubt relied upon Judge Cohn's earlier, albeit non-binding, determination that Count II is not subject to the requirements of section 2–622, and the Court sees no reason why the Plaintiff should be punished for such reliance. *See Kus*, 149 Ill.Dec. 103, 561 N.E.2d at 385 (holding that the trial court abused its discretion in dismissing a claim for healing

---

3. To the extent the Plaintiff attempts to assert an implied private right of action based upon 730 ILCS 5/3–7–2(d) in Count II of the amended complaint, the Illinois Unified Code of Corrections creates no implied private right of action. *See Daniel v. Power*, No. 3:04 CV 789 DRH, 2005 WL 1958376, at *3 (S.D.Ill. Apr.22, 2005); *McNeil v. Carter*, 318 Ill.App.3d 939, 252 Ill.Dec. 413, 742 N.E.2d 1277, 1280–81 (Ill.App.Ct.2001). *See also Blankenship v. Kittle*, No. 03 C 3573, 2003 WL 22048712, at *2–3 (N.D.Ill. Aug.6, 2003) (quoting *Ashley v. Snyder*, 316 Ill.App.3d 1252, 250 Ill.Dec. 900, 739 N.E.2d 897, 902 (Ill.App.Ct.2000)) ("Prison regulations ... were *never* intended to confer rights on inmates or serve as a basis for constitutional claims .... Instead, Illinois [Department of Corrections] regulations, as well as the Unified Code [of Corrections], were designed to provide guidance to prison officials in the administration of prisons. In addition, Illinois law creates no more *rights* for inmates than those which are constitutionally required.") (emphasis in original). Furthermore, the principle that a federal court, in applying state law, is to be conservative, not innovative, *see Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942 (7th Cir.1986) ("[R]esident litigants who seek adventurous departures in state common law are advised to sue in state rather than federal court."), applies with especial vigor when a federal court is asked to imply a private right of action under a state statute. Were there any serious question of the Court being required to address the matter of a private right of action under the Illinois Unified Code of Corrections, the most prudent course would be to decline to exercise jurisdiction over Count II. *See* 28 U.S.C. § 1367(c)(1); *Willis v. Bell*, 669 F.Supp. 229, 232–34 (N.D.Ill.1987).

art malpractice with prejudice by reason of the Plaintiff's failure to file a section 2–622 affidavit where "a review of the facts in this case reveals that the plaintiff believed that his case was not covered under section 2–622"). The proper course in this instance is to grant the Defendants' motion to dismiss and to dismiss Count II of the Amended Complaint without prejudice, while granting the Plaintiff ninety (90) days to re-file Count II with the proper affidavit as required by 735 ILCS 5/2–622.

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion to Dismiss Count II of Plaintiff's Amended Complaint filed by the Defendants, Brian Ruiz, M.D. and Wexford Health Sources, on September 26, 2005 be **GRANTED** (Doc. 36), that Count II of the amended complaint be **DISMISSED WITHOUT PREJUDICE**, that the Plaintiff be **DIRECTED** to re-file Count II of the amended complaint with the correct affidavit as required by 735 ILCS 5/2–622 not later than **ninety (90) days** from the date of entry of the Order of dismissal, and that the Court adopt the foregoing statement of facts and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *See Snyder v. Nolen,* 380 F.3d 279, 284 (7th Cir.2004); *United States v. Hernandez–Rivas,* 348 F.3d 595, 598 (7th Cir.2003).

April 25, 2006.