# Illinois Official Reports

## Appellate Court

---

### *Williams v. Athletico, Ltd.*, 2017 IL App (1st) 161902

---

| | |
|---|---|
| Appellate Court Caption | JODINE WILLIAMS and CHRISTOPHER T. WILLIAMS, Individually; and JODINE WILLIAMS and CHRISTOPHER T. WILLIAMS, as Plenary Coguardians of the Person of Drew Williams, a Disabled Person, Plaintiffs-Appellees, v. ATHLETICO, LTD., a Corporation; ACCELERATED REHABILITATION CENTERS, LTD., a Corporation; and ALBERT BUZON, ATC a/k/a Wojciech Buzun, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-16-1902 |
| Filed | March 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-10041; the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Certified questions answered; cause remanded. |
| Counsel on Appeal | Cray Huber Horstman Heil & VanAusdal LLC, of Chicago (Stephen W. Heil and Chase M. Gruszka, of counsel), for appellant Athletico, Ltd.<br><br>Kaufman Dolowich & Voluck, LLP, of Chicago (David T. Brown and Bradley S. Levison, of counsel), for other appellants.<br><br>Corboy & Demetrio, P.C., of Chicago (William T. Gibbs, of counsel), for appellees. |

JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion.


**OPINION**

¶ 1      Plaintiffs Jodine Williams and Christopher Williams, both individually and as plenary coguardians of Drew Williams, a disabled person, filed suit in Cook County circuit court against Athletico, Ltd. (Athletico), Accelerated Rehabilitation Centers, Ltd. (ARC), and Albert Buzon, ATC, a/k/a Wojciech Buzun[1] (collectively, defendants), alleging that defendants were negligent for failing to assess Drew for symptoms of head trauma during a high school football game. Plaintiffs alleged that defendants failed to (1) assess Drew for symptoms of head trauma "following a significant blow to the head," (2) "evaluate [Drew] for a concussion until the fourth quarter of the game," and (3) "recognize the signs of [Drew] suffering a brain trauma."

¶ 2      Defendants moved to dismiss plaintiffs' complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)) on the ground that, because the complaint sounded in healing arts malpractice, plaintiffs were required to comply with section 2-622 of the Code (735 ILCS 5/2-622 (West 2014)), and this failure warranted dismissal under section 2-622(g) of the Code. The trial court denied defendants' motion to dismiss; however, it certified the following three questions of law pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016):

> "1. Whether it is necessary for a plaintiff to attach a certificate from a health care professional, pursuant to section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622), where the complaint alleges negligent conduct by an Athletic Trainer during a high school football game in which the trainer was hired to provide on-site injury evaluation to ensure the health and well-being of the participating athletes.
>
> 2. Whether it is necessary for a plaintiff to attach a certificate from a health care professional pursuant to section 2-622 of the Code where the complaint alleges negligent conduct by a licensed Athletic Trainer for failing to evaluate an athlete for a concussion following a head trauma suffered while participating in an athletic program.
>
> 3. If so, must the health care professional that issues the certificate pursuant to section 2-622 of the Code be someone in the same profession, with the same class of license as the defendant Athletic Trainer."

¶ 3      We allowed defendants' application for leave to appeal pursuant to Rule 308(a). For the following reasons, we reframe the first and second certified questions and answer in the affirmative and answer the third certified question in the negative. We remand for further proceedings consistent with this opinion.

---

[1]The spelling of Wojciech's last name appears as both "Buzon" and "Buzun" throughout the record. We refer to Wojciech in this opinion as "Buzun," as that is the spelling used by his counsel on appeal.

¶ 4                                          BACKGROUND

¶ 5          Plaintiffs' first amended complaint asserts four counts. Counts I and III allege negligence
against Athletico and ARC/Buzun, respectively, and counts II and IV assert claims under the
family expense provision of the Rights of Married Persons Act (750 ILCS 65/15 (West 2014))
against Athletico and ARC/Buzun, respectively. For purposes of this appeal, we set forth only
the relevant allegations dealing with the negligence claims.

¶ 6          Count I alleges that Athletico was under contract with Chicago public schools "to assign
and maintain an adequate staff of competent personnel that was fully equipped, licensed as
appropriate, available as needed, and qualified to provide on-site injury care and evaluation
and assist on all matters pertaining to the health and well-being of the athletes participating" in
an October 4, 2013, high school football game between Lane Tech High School and Dunbar
High School, in Chicago. Drew participated in the game on behalf of Lane Tech. During the
first quarter of the game, Drew "violently collided" with a teammate, causing Drew's
teammate to suffer a broken rib and ruptured spleen.[2] Following the collision, Drew "was not
assessed or evaluated for symptoms of Concussive Brain Trauma." According to the
complaint, Athletico trainers "watch for signs of concussion and must evaluate and assess a
player following a sign of brain trauma." Drew continued participating in the game,
"sustaining numerous additional impacts to his head."[3] The complaint asserts that "Second
Impact Syndrome occurs when the brain swells rapidly and catastrophically as a result of
additional blows to the head following a Concussive Brain Trauma." During the fourth quarter
of the game, Drew "appeared on the sideline, dazed," and "suffered numerous brain bleeds as a
result of continuing to play football following a Concussive Brain Trauma." Plaintiffs assert
that Athletico was negligent in failing to (1) "assess [Drew] for symptoms of head trauma
following a significant blow to the head," (2) "evaluate [Drew] for a concussion following
head trauma," and (3) "recognize the signs of [Drew] suffering a brain trauma" and that, "as a
direct and proximate result of one or more of the above negligent acts or omissions, [Drew]
sustained injuries of a personal and pecuniary nature, rendering him disabled."

¶ 7          Count III alleges that ARC had an agreement with Lane Tech whereby ARC was "required
to provide athletic trainer services to Lane Tech students participating in all varsity football
games during the 2013 season in order to evaluate and treat athletic injuries sustained during
the games." ARC assigned Buzun as Lane Tech's athletic trainer. Plaintiffs allege that after
Drew collided with his teammate, Drew "was not properly assessed or evaluated for symptoms
of Concussive Brain Trauma by [Buzun] or any other agent or employee of [ARC], despite
demonstrating a sign of concussive brain trauma."[4] Count III repeats the allegations that Drew
continued to participate in the game, "sustaining numerous additional impacts to his head,"
that "Second Impact Syndrome occurs when the brain swells rapidly and catastrophically as a
result of additional blows to the head following a Concussive Brain Trauma," and that during
the fourth quarter of the game, Drew "appeared on the sidelines, dazed." The complaint alleges
that "during the fourth quarter incident, [ARC] by and through its duly authorized agent and
employee, [Buzun], performed a concussion assessment" and that during the assessment, Drew
"began seizing and became unresponsive." Plaintiffs again allege that Drew "suffered

---

[2]The complaint does not describe the collision in any further detail.

[3]The complaint does not describe these "additional impacts" in any further detail.

[4]The complaint does not describe the "sign of concussive brain trauma" in any manner.

numerous brain bleeds as a result of continuing to play football following a Concussive Brain Trauma." Plaintiffs alleged that ARC and Buzun failed to (1) "assess [Drew] for symptoms of head trauma following a significant blow to the head," (2) "evaluate [Drew] for a concussion until the fourth quarter of the game," and (3) "recognize the signs of [Drew] suffering a brain trauma" and that "as a direct and proximate result of one or more of the above negligent acts or omissions, [Drew] sustained injuries of a personal and pecuniary nature, rendering him disabled."

¶ 8                                                ANALYSIS

¶ 9        Illinois Supreme Court Rule 308 allows a trial court, upon a finding that an order involves a question of law as to which there is substantial ground for difference of opinion, to make an otherwise interlocutory order immediately appealable if an appeal may materially advance the ultimate termination of the litigation. Ill. S. Ct. R. 308(a) (eff. Jan. 1, 2016). Our review is generally confined to the certified question. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009); *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 21. However, we may limit our consideration of the question as necessary if answering the question as certified would not materially advance the ultimate determination of the litigation. See *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶ 11 (citing *De Bouse*, 235 Ill. 2d at 557). Certified questions under Rule 308 are issues of law, and our review is *de novo*. *Doe No. 2 v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 67.

¶ 10       Because the first and second certified questions are similar, we can consider them together under a single analysis. See *Simmons v. Homatas*, 236 Ill. 2d 459, 466 (2010). The parties agree, and we concur, that the first and second certified questions, while worded differently, apply to licensed athletic trainers and seek an answer to the question of whether plaintiffs were required to attach an affidavit and report, pursuant to section 2-622 of the Code, to their complaint. In the circuit court, the parties expressed concern over the wording of the questions to be certified, with each side advancing an advocate's perspective on what was essentially the same question: plaintiffs were concerned with the alleged failures to assess, evaluate, and recognize head and brain trauma, whereas defendants were focused on the alleged negligence and the provision of on-site injury evaluation and prevention. Neither party has raised any issue regarding the licensing requirements for athletic trainers.[5] The circuit court took a middle ground and proposed submission of both the first and second questions so that "the Appellate Court might have a better understanding of what exactly it is that's being asked of them. *** I don't think that they are overburdensome, because they flow. They make it much more understandable what it is that you're asking."

¶ 11       Although the circuit court should ensure that a certified question is concise and clearly states the question to be answered, considering the first and second question presented, we can comply with our responsibilities under the requirements of Rule 308 by combining questions one and two to ensure that our answers are limited to the questions presented. See *De Bouse*, 235 Ill. 2d at 557. As presented in both question one and question two, the core question of law to be answered is whether the alleged negligent conduct concerns the area of healing art malpractice and whether compliance with section 2-622 of the Code is required. We are essentially being asked the following question:

_____
[5]We discuss licensure of athletic trainers below.

- 4 -

"Whether it is necessary for a plaintiff to attach a certificate from a health professional pursuant to section 2-622 where the complaint alleges negligent conduct by a licensed athletic trainer hired to provide on-site injury evaluation and treatment to participants in an athletic competition for failing to assess and evaluate a participating athlete for a concussion and for failing to recognize the signs of a concussion following a trauma sustained by the participant."

¶ 12                    *Whether a Section 2-622 Certificate Is Required*

¶ 13        Section 2-622 of the Code states in relevant part that

"(a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional ***; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. *** A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit, but information which would identify the reviewing health professional may be deleted from the copy so attached

* * *

(g) The failure to file a certificate required by this Section shall be grounds for dismissal under Section 2-619." 735 ILCS 5/2-622(a)(1), (g) (West 2014).

¶ 14        A plain reading of section 2-622(a) provides that, where a claim is filed alleging healing art malpractice, an affidavit from a *pro se* plaintiff or his attorney must be attached to the complaint. The affiant must state that he has consulted with a health professional, that the health professional has reviewed the relevant records and has determined in a written report that there is reasonable and meritorious cause for filing a complaint, and that in light of the report and consultation, the affiant concludes that there is reasonable and meritorious cause for filing the complaint. A copy of the report must be attached to the affidavit. If the plaintiff fails to attach the required affidavit and report containing the required information, the complaint is subject to dismissal under subsection (g). Typically, where the complaint is against a doctor, physician, nurse, or a hospital, there is little question that section 2-622 applies. However, where the defendant is not considered to be within one of these professions, a reasonable question exists as to section 2-622's applicability. See *Jackson v. Chicago Classic Janitorial & Cleaning Service, Inc.*, 355 Ill. App. 3d 906, 910-11 (2005).

¶ 15        Defendants argue that the plaintiffs' claims fall within the ambit of "healing art malpractice" because the procedures employed by an athletic trainer, a person that receives specialized training and must be licensed to practice in Illinois, are not within the grasp of an

ordinary lay juror. Defendants argue that the recognition, evaluation, and assessment of an athlete for a concussion following a head trauma requires the use of medical judgment. According to defendants, plaintiffs will need to present expert testimony with respect to the applicable standard of care and defendants' alleged breach to prevail since a determination of those issues is beyond the knowledge of the average lay juror.

¶ 16    Plaintiffs argue that their allegations sound in ordinary negligence, not in healing art malpractice. They contend that defendants were "negligent in performing the activities they contracted to provide" and by that failing to assess Drew for concussive head trauma, by failing to timely evaluate Drew for a concussion, and by failing to recognize that Drew was suffering from brain trauma, the defendants were not employing medical judgment but instead were "simply shirking their agreed upon tasks." Plaintiffs argue that defendants cannot "credibly argue" that the athletic trainers were "rendering any services ordered by a physician or part of a comprehensive treatment plan" for Drew. They argue that compliance with section 2-622 is only required in cases that require expert analysis of a medical condition, treatment procedure, or diagnosis.

¶ 17    The legislature has not defined "healing art malpractice." Defendants argue that it must be construed broadly (see *Woodard v. Krans*, 234 Ill. App. 3d 690, 703 (1992)) and that the individual terms "healing art" and "malpractice" must be given their plain and ordinary meaning (see *Jackson v. Chicago Classic Janitorial & Cleaning Service, Inc.*, 355 Ill. App. 3d 906, 910-11 (2005)).

¶ 18    In *Jackson*, the plaintiff sustained injuries during a physician-ordered evaluation performed by a licensed occupational therapist. *Id.* at 907-08. The negligence claim against the occupational therapist was dismissed for failing to attach a section 2-622 certification. *Id.* at 908. In answering a certified question of law pursuant to Rule 308, we found that plaintiff was required to comply with section 2-622. *Id.* at 909.

¶ 19    We first looked to our decision in *Lyon v. Hasbro Industries, Inc.*, 156 Ill. App. 3d 649, 653 (1987), in which we examined the term "healing art." We defined "healing" as "[t]he restoration to a normal mental or physical condition" and "art" as "a skill acquired by experience, study, or observation and as a branch of learning." (Internal quotation marks omitted.) *Id.* We concluded that the phrase "healing art" includes "an entire branch of learning dealing with the restoration of physical or mental health." *Id.* at 654.

¶ 20    Next, the *Jackson* court observed that "malpractice" is defined as the " '[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury *** to the recipient of those services.' " *Jackson*, 355 Ill. App. 3d at 910 (quoting Black's Law Dictionary 959 (6th ed. 1990)); see also *Loman v. Freeman*, 375 Ill. App. 3d 445, 452 (2006) (" 'Malpractice' is '[a]n instance of negligence or incompetence on the part of a professional.' " (quoting Black's Law Dictionary 978 (8th ed. 2004))).

¶ 21    *Jackson* then considered whether the complaint sounded in healing art malpractice, requiring compliance with section 2-622, or whether the complaint alleged ordinary negligence. Three factors were considered: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror, (2) whether the activity is inherently one of medical judgment, and (3) the type of evidence that will be necessary to establish plaintiff's case. *Jackson*, 355 Ill. App. 3d at 911-13. As to the first factor, we found that

occupational therapists conducting the evaluations at issue in *Jackson* "employ specialized knowledge and skill that is not within the grasp of the ordinary lay juror," and we acknowledged that occupational therapists are licensed by and subject to discipline by the State. *Id.* at 911. As to the second factor, we found that occupational therapists exercised medical judgment when determining which exercises were appropriate in conducting the evaluations. *Id.* at 912; see also *Lyon*, 156 Ill. App. 3d at 655 (finding that an ambulance company's determination of which equipment was necessary and precautionary to meet the needs of a patient is inherently one of medical judgment). Finally, as to the third factor, we observed that the evidence necessary to prove the allegations against the occupational therapist was "beyond the ken of the average lay juror" and, as such, would require expert testimony. *Jackson*, 355 Ill. App. 3d at 913. We concluded that the allegations of the plaintiff's complaint fell within the "ambit" of the term " 'healing art malpractice' and section 2-622 of the Code." *Id.*

¶ 22        We believe the analysis in *Jackson* is sound and applicable to the case before us. First, we consider whether the standard of care for athletic trainers in evaluating concussions involves procedures not within the grasp of the ordinary lay juror. As a matter of public policy, the legislature enacted the Illinois Athletic Trainers Practice Act (Athletic Trainers Practice Act) (225 ILCS 5/1 (West 2014)), which requires those who hold themselves out as athletic trainers in Illinois be licensed, with certain exceptions not relevant here.

¶ 23        The Athletic Trainers Practice Act defines a "licensed athletic trainer" as:

> "[A] person licensed to practice athletic training as defined in this Act and with the specific qualifications set forth in Section 9 of this Act who, upon the direction of his or her team physician or consulting physician, carries out the practice of prevention/emergency care or physical reconditioning of injuries incurred by athletes participating in an athletic program conducted by an educational institution ***." 225 ILCS 5/3(4) (West 2014).

Section 3(4) of the Athletic Trainers Practice Act sets forth a nonexhaustive list of the specific duties of an athletic trainer, which includes "[p]rovision of on-site injury care and evaluation *** for all injuries sustained by athletes in the program." 225 ILCS 5/3(4)(H) (West 2014). Section 4 of the Athletic Trainers Practice Act provides that: "[N]o person shall provide any of the services set forth in subsection (4) of Section 3 of this Act, or use the title 'athletic trainer' or 'certified athletic trainer' *** or the letters *** 'A.T.C.' *** after his [or her] name, unless licensed under this Act." 225 ILCS 5/4 (West 2014). Licensed athletic trainers are subject to discipline through the Illinois Department of Financial and Professional Regulation. 225 ILCS 5/16 (West 2014).

¶ 24        Here, the complaint alleges that Athletico was hired by Chicago public schools and ARC and Buzun were hired by Lane Tech to provide on-site injury evaluation and treatment to athletes participating in the October 4, 2013, football game.[6] Defendants were hired to provide services that only a licensed athletic trainer could provide, and they held themselves out as licensed athletic trainers. Defendants were therefore subject to the requirements of the Athletic Trainers Practice Act and were required to meet the qualifications for licensure and comply with the statutory duty to provide injury care and evaluation to all participating athletes under

---

[6]The complaint alleges that ARC "agreed to provide athletic training services for Lane Tech," although the complaint does not allege the existence of a written contract.

- 7 -

their care, including Drew. See 225 ILCS 5/3(4)(H) (West 2014); see also *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1053 (2009) (finding that the Athletic Trainers Practice Act "demonstrates the existence of a standard of care for athletic trainers"). With respect to the first *Jackson* factor, the duty to evaluate and treat on-site injuries is vested in athletic trainers licensed by and subject to discipline by the State. In the context of the negligence allegations in this case, a determination of the standard of care required of the defendants, including the specialized knowledge and skill involved in carrying out an athletic trainer's duties to assess, evaluate, and recognize an athlete's condition, is not within the grasp of a lay juror. See *Jackson*, 355 Ill. App. 3d at 911. The first *Jackson* factor weighs in favor of finding that plaintiffs' complaint alleges healing art malpractice for the purposes of section 2-622 of the Code.

¶ 25     With respect to the second *Jackson* factor, defendants argue that the athletic trainers' activity was "inherently one of medical judgment." They argue that Illinois public policy reflects that athletic trainers are considered competent to provide the medical judgment necessary to evaluate concussions. In support, defendants point to Public Act 99-245 (eff. Aug. 3, 2015) (adding 105 ILCS 5/22-80), which amended the Illinois School Code to require that, where a student is removed from an athletic activity due to a belief that the student sustained a concussion, the student may not practice or compete until that student has been evaluated, using established medical protocols, by a physician or athletic trainer.[7]

¶ 26     Plaintiffs argue that defendants' medical judgment was never employed because the defendants did not evaluate or treat Drew in response to the first-quarter collision. Plaintiffs argue that Drew allegedly sustained "numerous additional impacts" to his head before defendants evaluated him for the first time in the fourth quarter. We fail to see how this would alter our analysis because a licensed professional's failure to perform in accord with the applicable standard of care can also be a basis for liability.

¶ 27     Plaintiffs' first amended complaint alleges that Athletico and ARC/Buzun "watch for signs of concussion and must evaluate and assess a player following a sign of brain trauma." This allegation clearly implicates a medical judgment. In order to watch for, evaluate, and assess the signs of a brain trauma, the defendants are required to possess the specialized knowledge and skill of a licensed athletic trainer, and they must be familiar with what signs to look for and how to evaluate and assess those signs in order to respond appropriately. In *Lyon*, we held that even though the plaintiff's claim against an ambulance company for failing to properly equip an ambulance sounded in ordinary negligence, plaintiff was not excused from the requirements of section 2-622 of the Code because "the determination of which equipment is necessary and precautionary to meet a person in plaintiff's condition's needs is inherently one of medical judgment." *Lyon*, 156 Ill. App. 3d at 655. In *Jackson*, we held that an occupational therapist's determination of the appropriate exercises in conducting the plaintiff's evaluation was inherently one of medical judgment where those determinations could "only be properly made by individuals with the necessary training and expertise." *Jackson*, 355 Ill. App. 3d at 912.

¶ 28     Here, a determination of whether to assess or evaluate Drew following the first-quarter collision requires at least some degree of medical judgment. In our view, plaintiffs' claim is analogous to a medical negligence claim alleging a failure to diagnose, in which a

---

[7]Defendants acknowledge that Public Act 99-245 became effective after plaintiffs filed their first amended complaint in this cause but argue that we can consider it as part of our state's public policy.

- 8 -

professional's conduct (*e.g.*, the failure to assess or evaluate a patient and thereby failing to diagnose a condition) falls below the standard of care, resulting in an injury. See, *e.g.*, *Kramer v. Milner*, 265 Ill. App. 3d 875, 876 (1994) (involving allegations that defendant physician was negligent in failing to recommend or order a screening mammogram that could have revealed decedent's breast cancer and whether defendant's conduct fell below the applicable standard of care). We therefore find that the second *Jackson* factor weighs in favor of finding that plaintiffs' complaint alleges healing art malpractice for the purposes of section 2-622.

¶ 29 The final *Jackson* factor considers the type of evidence that will be necessary for plaintiffs to prove their case. Defendants argue that since this is a professional negligence case, plaintiffs will need expert testimony to establish both the standard of care (see *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 20 (" '[I]n professional negligence cases, *** the plaintiff bears a burden to establish the standard of care through expert witness testimony.' " (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 24 (1996)))) and that a deviation from that standard caused the plaintiffs' injuries (*Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 296 (2000)). Defendants argue that the evidence necessary in this case to prove negligence is beyond the knowledge of a lay juror. Plaintiffs do not offer any counter-argument on this point.

¶ 30 We take caution in not issuing advisory opinions as to how plaintiffs must prove their case, and we do not intend to inadvertently stray beyond the issues germane to the certified questions. The proof required to establish defendants' liability is better left to the circuit court. That stated, considering defendants' status as licensed athletic trainers, their alleged acts and omissions, and plaintiffs' theory of liability, the third *Jackson* factor weighs in favor of finding that plaintiffs' complaint sounds in healing art malpractice. Based on the record before us, it appears that plaintiffs will need to establish that defendants failed to employ the degree of knowledge, skill, and ability that a reasonable athletic trainer would employ under similar circumstances.

¶ 31 In sum, for the reasons set forth above, we answer the reframed version of the first and second certified questions in the affirmative: plaintiffs were required to attach an affidavit and health professional's report pursuant to section 2-622 of the Code, where the complaint alleges negligent conduct by a licensed athletic trainer hired to provide on-site injury evaluation and treatment to participants of an athletic competition for failing to assess and evaluate an athlete for a concussion and for failing to recognize the signs of a concussion following a head trauma sustained by a participant in the athletic competition. On remand, the trial court is instructed to allow plaintiffs a reasonable opportunity to comply with section 2-622.

¶ 32 *What Type of Health Professional Must Author the Section 2-622 Report*

¶ 33 Having answered the first and second certified questions in the affirmative, we consider the third certified question:

"3. If so, must the health care professional that issues the certificate pursuant to section 2-622 of the Code be someone in the same profession, with the same class of license as the defendant Athletic Trainer."

¶ 34 We start again with the plain language of section 2-622(a)(1) of the Code, which provides in relevant part:

"That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant

issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. *If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatric physician, a psychologist, or a naprapath, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches.* In either event, the affidavit must identify the profession of the reviewing health professional." (Emphasis added.) 735 ILCS 5/2-622(a)(1) (West 2014).

¶ 35    The parties do not dispute that "athletic trainers" fall within the category of "all other defendants" in section 2-622(a)(1) of the Code. The statute plainly states: "For affidavits filed as to all other defendants, the written report *must* be from a physician licensed to practice medicine in all its branches." (Emphasis added.) 735 ILCS 5/2-622(a)(1) (West 2014). Defendants, however, argue that the report here should be "authored by a physician with qualifications tailored to the field of athletic training" or, alternatively, that the written report "should be authored by someone in the same profession, with the same class of license as the defendant athletic trainer" because the initial review of a potential cause of action for medical malpractice under section 2-622 necessarily encompasses a review of the applicable standard of care, and in general, in order to testify as an expert on the standard of care in a given school of medicine, a witness must be licensed in that school of medicine. We disagree.

¶ 36    Defendants' argument cannot be accepted in light of the plain language of the statute. To require plaintiffs in this case to file a written report from an athletic trainer with the same class of license as defendants would be contrary to the plain language of the section 2-622 of the Code and would therefore be contrary to the express intent of the legislature. See *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997) ("The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.").

¶ 37    We therefore answer the third certified question in the negative: the health professional that reviews the case and authors the written report pursuant to section 2-622(a) of the Code need not be someone in the same profession, with the same class of license as the defendant athletic trainer, but instead must be a physician licensed to practice medicine in all its branches who is otherwise qualified under section 2-622(a) of the Code.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, plaintiffs' first amended complaint sounds in healing art malpractice, and plaintiffs were therefore required to comply with section 2-622 of the Code by attaching an affidavit accompanied by a written report from a physician licensed to practice in all branches of medicine who meets the qualifications of section 2-622(a)(1). We remand

this cause to allow plaintiffs a reasonable opportunity to comply with section 2-622 of the Code and for further proceedings consistent with this opinion.

¶ 40          Certified questions answered; cause remanded.